FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 10, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRITTANY M., | NO. 4:24-CV-5105-TOR |
| Plaintiff, | |
| v. | ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT |
| CAROLYN COLVIN, Acting Commissioner of Social Security [1] | |
| Defendant. | |

BEFORE THE COURT is Plaintiff's Motion for judicial review of

Defendant's denial of her application for Title II and Title XVI under the Social

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on

November 30, 2024.  Pursuant to Rule 25(d) of the Federal Rules of Civil

Procedure, Carolyn Colvin is substituted for Martin O'Malley as the defendant in

this suit. No further action need be taken to continue this under the Social Security

Act, 42 U.S.C. § 405(g).

Security Act (ECF No. 7).  This matter was submitted for consideration without oral argument.  The Court has reviewed the administrative record and is fully informed.  For the reasons discussed below, the Commissioner's denial of Plaintiff's application for benefits under Title II and Title XVI of the Social Security Act is AFFIRMED.

## JURISDICTION

The Court has jurisdiction under 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE STEP SEQUENTIAL EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§ 404.152(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a0(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Substantial work activity is "activity that involves doing significant physical or mental activities," even if performed on a part -time basis. 20 C.F.R. § 404.1572(a).  "Gainful work activity" is work performed "for pay or profit," or "the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 416.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 4

416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id*.

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity" ("RFC") before awarding benefits.  RFC is generally defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)), and is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing work that he or she has performed in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Work in the national economy "means work which exists in significant numbers either in the region where [the] individual lives or in several regions of the country."  42 U.S.C § 423(d)(2)(A).  The Commissioner can meet this burden by soliciting the impartial testimony of a vocational expert.  *White v. Kijakazi*, 44 F.4th 828, 833-34 (9th Cir. 2022).  In making this determination, the Commissioner must also consider factors such as the claimant's age, education and work experience.  *Id*.  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id*.

The claimant bears the burden of proof at steps one through four above, and a claimant who meets the first four steps has established a prima facie case of disability and entitlement to benefits.  *White*, 44 F.4th at 833 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).  At step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other

work and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1550(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ's FINDINGS

On January 27, 2021, Plaintiff applied for Title II disability and disability insurance benefits, and protectively filed for Title XVI supplemental security income on December 8, 2021, with an alleged onset date of November 30, 2020. Administrative Transcript ("Tr.") ECF No. 6 at 22.  Plaintiff generally alleged she was disabled due to catatonia, anxiety, psychosis, eps prophylaxis, psychosis and mood, bipolar disorder mixed with psychosis, and migraines.  Tr. 73.  These applications were initially denied April 26, 2022, and upon reconsideration on August 30, 2022.  Tr. 22.  By mutual agreement, the Administrative Law Judge ("ALJ") conducted a telephonic hearing on October 24, 2023.  *Id*.  The ALJ denied Plaintiff's claims on November 20, 2023. *See generally* Tr. 22–36.  Plaintiff's claim was denied on appeal.  Tr. 6.

At step one, the ALJ determined that Plaintiff had not engaged in gainful employment since the onset date, November 30, 2020.  Tr. 24.

At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, catatonia, posttraumatic stress disorder ("PTSD"), and migraines.  Tr. 24.  The ALJ found that Plaintiff's hand tremors are managed

by medication, per her report, and therefore non-severe.  Tr. 25.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). With respect to Plaintiff's migraines, the ALJ analogized to listing 11.02(B) or (D) for dyscognitive seizures.  The ALJ determined that the record did not establish the requirement under 11.02(B) that Plaintiff experienced at least one migraine a week for at least three consecutive months, despite adherence to a prescribed treatment. Tr. 25.  Specifically, the ALJ opined that at times the record reflected that Plaintiff's medication regime managed her migraines in such a way that they occurred less than once a week.  *Id.*  In referencing later analysis, the ALJ determined that Plaintiff did not have more than a moderate limitation with respect to (1) physical functioning, (2) understanding, remembering, or applying information, (3) interacting with others, (4) concentrating, persisting, or maintaining pace, or (5) adapting or managing oneself in conjunction with one migraine a week for three consecutive months pursuant to 11.02(D).  *Id*.

Regarding Plaintiff's mental impairments, the ALJ determined that when considered singularly or in combination, they did not meet or medically equal the criteria as set forth in 12.03, 12.04, and 12.15, and did not result in a "Paragraph B" impairment of one extreme limitation or two marked limitations in functioning.

Tr. 26.  Regarding understanding, remembering, or applying information, the ALJ found that Plaintiff had a moderate limitation as demonstrated by her improvement after inpatient treatment in 2020.  *Id*.  After treatment, the ALJ noted Plaintiff experienced points of poor computations or impaired cognition, but as a whole was able to handle her medical care and finances, and engaged in cooking, cleaning, driving, and caring for her two children.  *Id*.  Likewise, the ALJ determined that Plaintiff had a moderate impairment in interacting with others, based in part on the paranoid delusions she experienced in 2020, paired with her continued symptoms of anxiety and depression that have improved with treatment.  *Id*.  Once again, the ALJ determined that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace, based on her recorded speech latency and problems concentrating as compared with her current activities like driving, handling finances, and caring for a household.  *Id*.  Finally, the ALJ also found a moderate limitation in adapting or managing oneself, based on both the effect stress has on her, blacking out and limiting articulation, as weighed against her independent and parenting activity.  Tr. 27.  The ALJ also found that "Paragraph C" was not satisfied because Plaintiff has a demonstrated ability to adapt to change.  *Id*.

Based on the record, the ALJ determined that Plaintiff could perform a full range of work at all exertional levels but with the following nonexertional limitations:

> [S]he can never climb ladders, ropes, or scaffolds, and she can have no exposure to workplace hazards, including unprotected heights and moving mechanical parts. The claimant can perform simple, routine tasks, but not at a production rate pace. She can make simple work-related decisions, adapt to occasional changes in the work routine, and have occasional interaction with supervisors and coworkers, while she can have no interaction with the public.

Tr. 27

As part of determining Plaintiff's Residual Functional Capacity, the ALJ engaged in a two-step process by which she first assessed whether Plaintiff's underlying medical impairments could reasonably be expected to produce the claimant's symptoms and if so, second whether the symptoms have the requisite intensity, persistence, and limiting effect of Plaintiff's work-related activities. Tr. 28. The ALJ found that Plaintiff's medically determinable impairments could cause the alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms were not consistent with the record. *Id*. The ALJ considered Plaintiff's mental health treatment, beginning in November and December 2020 with inpatient treatment, documenting her outpatient treatment and work with her providers to find the dosage of medication that provided relief, and credited her most recent provider Spencer Hendricks, PMHNP-BC, who found that Plaintiff had a brief psychological break in late 2020, from which she has recovered. Tr. 29. This was supported by a record that reflected periods of anxiety and depression treated by medication and therapy, and an ability to manage her

household.  Tr. 30.

With respect to her migraines, the ALJ found the reporting of their frequency was mixed.  Tr. 31.  The ALJ noted that when Plaintiff began treatment for her migraines in 2021, she was having headaches once per week, but with both daily and abortive treatment, she reported having less than one per week by 2022. Tr. 30.  Then in August of 2022, Plaintiff reported having headaches every other day, and later that year reported she was having four or five headaches a month and they were improving with treatment.  Tr. 30.  In August 2023, Plaintiff reported two to three migraines per week, triggered by stress and causing nausea, light sensitivity, and sound sensitivity.  Tr. 31.  Plaintiff was also prescribed rizatriptan rather than sumatriptan to mitigate her headaches without making her drowsy.  *Id*.  The ALJ took into account that the appearance of improvement of the frequency of the headaches, coupled with Plaintiff's ability to participate in psychiatric care and the management of her household, and found that her migraines did not cause a greater or additional limitation.  *Id*.

In drawing her conclusion, the ALJ considered the medical opinions of psychological consultant Sheri L. Tomak, Psy.D., psychological consultant Matthew Cormie, Psy.D., Plaintiff's treating psychiatric provider Spencer Hendricks, PMHNP-PC, medical consultant Dorothy Leong, M.D., medical consultant Ruth Childs, M.D., and Plaintiff's primary care provider, Mary Buriani,

M.D.  In considering Dr. Tomak and Dr. Cormie's opinions, the ALJ found agreement that the Plaintiff would have difficulty adapting to change and other stressors in the workplace and would function best with limited social demand.  Tr. 32.  However, both Dr. Tomak and Dr. Cormie's opinions suffered from individual shortcomings, and thus the ALJ did not adopt either in whole.  *Id*.  The ALJ found Mr. Hendricks' opinion to be unpersuasive as it is vague and lacked objective evidence supporting his diagnosis of a learning disorder rather than bipolar disorder.  *Id*.  The ALJ found Dr. Leong's opinion that Plaintiff's migraines were not severe to be unsupported by the record.  Tr. 33.  The ALJ found Dr. Childs and Dr. Buriani to be consistent at points with one another, but also had individual problems.  *Id*.  Additionally, the ALJ noted that she had reviewed the statements of third party laypersons, but had included them only for the subjective support of Plaintiff's allegations and not for persuasiveness.  Tr. 34.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work pursuant to 20 CFR 404.1565 and 416.965.

At step five, the ALJ found that Plaintiff is able to perform work in the national economy, considering her age, education, work experience, and residual functional capacity.  Tr. 34.  At the hearing, the vocational expert assessed occupational opportunities for unskilled work at all exertional levels, but with Plaintiff's nonexertional limitations.  Tr. 35.  The vocational expert determined

that occupations such as: hand packager, floor waxer, and counter supply worker would be available nationally. *Id*. The ALJ noted that during her testimony, the vocational expert clarified that the Dictionary of Occupational Titles does not directly address differences between types of climbing, working at a production pace, or levels of interaction with specific groups, but had made a final determination of Plaintiff's ability to participate in the outlined occupational descriptions based on the expert's professional training and experience. *Id*.

Given the above steps, the ALJ determined that Plaintiff was not disabled.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her applications for Title II disability and disability insurance, and Title XVI supplemental security income of the Social Security Act. Plaintiff raises the following issues on review:

I.   Whether the ALJ properly assessed Plaintiff's subjective complaints when considering her Residual Functional Capacity.

II.  Whether the ALJ committed harmful legal error by failing to properly evaluate lay witness testimony when considering Plaintiff's Residual Functional Capacity.

III. Whether the ALJ's Step Five findings are supported by a showing of a significant number of jobs in the national economy, or whether the jobs in the holding are obsolete.

ECF No. 7 at 1–2.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 13

1

## DISCUSSION

2

## I.    The ALJ properly evaluated Plaintiff's subjective complaints as part

3

of determining her Residual Functional Capacity.

4      Plaintiff faults the ALJ for (1) stating that she was switched from

5  sumatriptan to rizatriptan in an attempt to find a non-drowsy emergency migraine

6  aid without stating whether the change was helpful, (2) the conclusion that Plaintiff

7  could be on task during the workday as unsupported by the record, and (3) that it

8  was improper for the ALJ to rely on Plaintiff's daily activities as a counterweight

9  to Plaintiff's claim of disability.  ECF No. 7 at 7–8.

10      An ALJ engages in a two-step analysis to determine whether to discount a

11  claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL

12  1119029, at *2.  "First, the ALJ must determine whether there is 'objective

13  medical evidence of an underlying impairment which could reasonably be

14  expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at

15  1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The

16  claimant is not required to show that [the claimant's] impairment 'could reasonably

17  be expected to cause the severity of the symptom [the claimant] has alleged; [the

18  claimant] need only show that it could reasonably have caused some degree of the

19  symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d

20  1028, 1035-36 (9th Cir. 2007)).

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

5    omitted).  General findings are insufficient; rather, the ALJ must identify what

6    symptom claims are being discounted and what evidence undermines these claims.

7    *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

8    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

9    explain why he or she discounted a plaintiff's symptom claims).  "The clear and

10    convincing [evidence] standard is the most demanding required in Social Security

11    cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

12    *Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

13    Here, the ALJ found that Plaintiff's medical impairments could reasonably

14    be expected to cause the alleged symptoms, but her statements surrounding the

15    intensity, persistence, and limiting effect of the impairments were not consistent

16    with the record.  Tr. 28.

17    Factors to be considered in evaluating the intensity, persistence, and limiting

18    effects of a claimant's symptoms include:

19    (1) daily activities; (2) the location, duration, frequency, and intensity
       of pain or other symptoms; (3) factors that precipitate and aggravate the

20    symptoms; (4) the type, dosage, effectiveness, and side effects of any
       medication an individual takes or has taken to alleviate pain or other

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 15

1    symptoms; (5) treatment, other than medication, an individual receives
2    or has received for relief of pain or other symptoms; (6) any measures
     other than treatment an individual uses or has used to relieve pain or
3    other symptoms; and (7) any other factors concerning an individual's
     functional limitations and restrictions due to pain or other symptoms.

4    SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. §§ 404.1529(c), 416.929(c).

5         As to Plaintiff's contention that the ALJ failed to determine whether the

6    switch to rizatriptan actually provided relief or caused her continued drowsiness,

7    Plaintiff points to no place in the record detailing the medical outcome of the

8    change in medication, or if the change happened at all. The ALJ is instructed to

9    "consider all of the evidence in an individual's record," "to determine how

10   symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL

11   1119029, at *2. At the October 2023 hearing, Plaintiff stated she was still taking

12   sumatriptan, which requires her to sleep in order to provide relief. Tr. 58. In the

13   latest medical record discussing her migraine treatment, an August 2023 visit with

14   Dr. Bariani, the notes indicate that the provider was planning to switch Plaintiff

15   from sumatriptan to rizatriptan to see if it provided rescue relief without making

16   her drowsy. Tr. 743. Here, the ALJ cited to the record as it currently exists, the

17   Court could not locate a later in time medical record from any source that details if

18   Plaintiff ultimately switched to rizatriptan, whether it provided her relief, and if it

19   had the same drowsy side effects as sumatriptan. And with the record as the

20   backdrop, the ALJ found that Plaintiff did not demonstrate she would be off task to

a significant degree during the workday, given her role as a caregiver and performing activities like cleaning, preparing meals, shopping, handling finances and driving a car. Tr. 31. This was considered longitudinally, as the ALJ considered the holistic way in which Plaintiff has been able to be an active participant in providing childcare and in everyday tasks, in spite of her impairments, from 2021 to 2023. *Id*.

Plaintiff also faults the ALJ for taking into account her daily activities as evidence against disability. ECF No. 7 at 8–9. In testing a plaintiff's subjective testimony, an ALJ may consider inconsistencies in the claimant's testimony by positing "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelte*r, 504 F.3d at 1040. A claimant need not "'vegetate in a dark room'" in order for an ALJ to make a finding of disability. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir.1981)). However, an "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113 (internal citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id*. Additionally, an ALJ may take reports of daily activities and improvement after

receiving treatment as factors when assessing the credibility of a plaintiff's subjective description of symptoms. *Degen v. Berryhill*, 725 F. App'x 550, 553 (9th Cir. 2018) (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.")).

Here, the ALJ considered how Plaintiff's migraines impacted her daily life and found that while receiving psychiatric care from 2021 to 2023, there are few instances of reporting that Plaintiff was off task or had a deficit in concentration. Tr. 31. Moreover, in areas where she was reported to be off topic or lacking concentration, there was no note of accompanied migraine. *Id*. And with regard to Plaintiff's assertion that being a caregiver and household manager is an improper basis to discredit subjective testimony, the ALJ pointed to clear places where she found Plaintiff's testimony to be inconsistent with her activity. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("The ALJ also pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about her daily activities, such as attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week, and so forth."). The ALJ noted that by her own testimony at the hearing, Plaintiff is able to "push through," her symptoms in

1    order to care for her children, suggesting that she is able to perform daily activities

2    and contradicting her subjective reporting.  Tr. 28, 33.  In sum, the ALJ did not

3    provide improper analysis when discrediting the degree to which Plaintiff argued

4    she is impaired.

5    **II.    The ALJ considered the lay witness statements appropriately.**

6        Plaintiff argues that the ALJ erred by not considering a lay witness opinion

7    of her grandmother when deciding whether her reported symptoms were supported

8    by the record.  ECF No. 7 at 13.  As Plaintiff filed these claims on January 27,

9    2021, the post-March 27, 2017, rules are controlling.  *See* 20 C.F.R. § 404.1520c;

10   Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.

11   5844-01 (Jan. 18, 2017), available at 2017 WL 168819.

12       An ALJ is not required to articulate how he or she considered evidence from

13   nonmedical sources under the new regulations.  *See* 20 C.F.R. §§ 404.1520c(d),

14   416.920c(d).  Under the pre-2017 rules, an ALJ could reject a lay-witness opinion

15   if it was inconsistent with the medical evidence and where the testimony

16   "generally repeat[s]" discredited evidence of a plaintiff.  *Williams v. Astrue*, 493

17   Fed. Appx. 866, 869 (9th Cir. 2012) (quoting *Valentine v. Comm'r of Soc. Sec.*

18   *Admin.,* 574 F.3d 685, 690 (9th Cir.2009).  Plaintiff is correct that some courts

19   have found that under the new regulation, an ALJ still needs to articulate their

20   consideration of lay-witness statements and the reasons for discounting them.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER
TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 19

*Faviola V. v. O'Malley*, 1:22-CV-03074-RHW, 2024 WL 2992498, at \*1 (E.D. Wash. June 14, 2024); *Maureen P. v. Kijakazi*, 1:20-CV-03240-MKD, 2022 WL 1843988, at \*10 (E.D. Wash. Feb. 23, 2022) (quoting *Joseph M. R. v. Comm'r of Soc. Sec.,* 3:18-CV-01779-BR, 2019 WL 4279027, at \*12 (D. Or. Sept. 10, 2019). However, an ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Joseph M. R.*, 2019 WL 4279027, at \*11 (quoting *Molina*, 674 F.3d at 1114).

Here, the ALJ did not err in her articulation of the rejection of Plaintiff's grandmother's statement as she included it as lending support to Plaintiff's report of impairment. Specifically, the ALJ stated:

> According to the new rules for analyzing evidence, third party layperson statements are not medical opinions that require an analysis of persuasiveness, so while I noted such a statement in the record, I considered it only as subjective support for the claimant's allegations (Exhibit 13E).

Tr. 34.

The ALJ here made explicit reference to the lay opinion in question, Exhibit 13E, and stated that it was accepted in support of Plaintiff's subjective report of impairment. This is a satisfactory acknowledgement of the lay witness opinion and how it fits into the ALJ's overall determination of disability.

**III.    The ALJ did not err at Step Five with regard to questioning the vocational expert specifically about the labor market.**

Finally, Plaintiff argues that the determination of the ALJ should be remanded for an accurate finding of jobs within Plaintiff's limitations that are not obsolete.  ECF No. 7 at 15.  Under step five of the analysis, the Commissioner bears the burden of demonstrating that a specific number of jobs exist in the national economy that a plaintiff can perform despite the denoted limitations. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).  In aid of this determination, the ALJ may rely on an impartial vocational expert to testify regarding jobs that the plaintiff can perform in light of the explained limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).  Additionally, the ALJ must utilize the Dictionary of Occupational Titles ("DOT"), which is compiled by the Department of Labor and details the specific requirements for different occupations.  "If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the Dictionary, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)).

Plaintiff argues that the ALJ erred by not questioning the vocational expert utilized in this case about whether the jobs she developed based on Plaintiff's

residual functional capacity, hand packager, floor waxer, and counter supply worker, actually exist in great numbers in the national economy.  ECF No. 7 at 15.  Plaintiff argues that the Commissioner's release of an Emergency Message on June 22, 2024, quantifying 114 jobs as "isolated" for Step Five purposes, calls into question the ALJ's finding.[2]  Under the relevant regulation, when a job is classified as "isolated," it has been determined that the occupation does not exists in the national economy.  20 C.F.R. § 404.1566(b).  If the only jobs that a plaintiff is able to do are "isolated," then they are considered disabled, because jobs do not exist in the national economy that they can perform.

However, hand packager, floor waxer, or counter supply worker are not on the list of isolated jobs in the June 2024 Emergency Message, and Plaintiff does not point to a place in which the Commissioner has denoted them as such.  Instead, Plaintiff argues that the ALJ erred by not inquiring whether the occupation descriptions were in conflict with the current labor market.  ECF No. 7 at 15.

---

[2] *See* Social Security Administration, *Isolated Occupations We Will Not Use to Support a "Not Disabled" Finding at Step Five of the Sequential Evaluation Process*, EM-24026, *Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process, EM-24027*, https://secure.ssa.gov/apps10/reference.nsf/links/06212024021759PM.

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 22

1  When an ALJ utilizes a vocational expert, the adjudicator has an affirmative

2  responsibility to ask about any possible conflicts between the evidence and

3  information by the DOT and resolve the conflict, should it exist. *Tester v. Colvin*,

4  624 Fed. Appx. 485, 487 (9th Cir. 2015) (citing SSR 00–4p, 2000 WL 1898704, at

5  *2 (Dec. 4, 2000) ("SSR 00–4p").  However, conflicts between a DOT listing and

6  expert testimony must be obvious or apparent, meaning, "that the testimony must

7  be at odds with the Dictionary's listing of job requirements that are essential,

8  integral, or expected." *Gutierrez*, 844 F.3d at 808.  Here, the ALJ did not err

9  because during the hearing, she specifically asked the vocational expert about

10  conflicts between the DOT and the expert's findings, and the expert provided

11  clarification, but did not mention any job viability conflicts. Tr. 70–71.  Plaintiff

12  raises no conflict between the testimony and the actual requirements of the

13  occupations as listed by DOT, and though argues that there are "serious doubts

14  about the viability of these occupations in the current national economy," does not

15  provide any support for such assertion.  Without more, the Court cannot find that

16  the ALJ committed harmful error as she met the requirements of SSR 00–4p in

17  making her inquiry of the expert at the hearing.  Thus, the ALJ's Step Five analysis

18  is affirmed.

19  //

20  //

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 7) is **DENIED**.

2. Defendant's Response Brief (ECF No. 9) is **GRANTED**.  The final decision of the Commissioner is **AFFRIMED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

DATED January 10, 2025.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING COMMISSIONER'S DENIAL OF BENEFITS UNDER TITLES II & XVI OF THE SOCIAL SECURITY ACT ~ 24